IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TAMMY SUE TAYLOR, | CIVIL NO. 19-00494 JAO-KJM |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| WILLIAM L. BARTOLUCCI, JR. | |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case is about a property dispute between Plaintiff Tammy Taylor ("Plaintiff") and Defendant William Bartolucci, Jr. ("Defendant"). Plaintiff contends Defendant fraudulently induced her to convey her property to him and then breached his promises to allow her to remain on that property while he renovated it and to split the proceeds with her after he sold it, and so is liable for fraud, breach of contract, promissory estoppel, and unjust enrichment. Defendant moves for summary judgment on all of Plaintiff's claims, as well as his counterclaims for ejectment and trespass. *See* ECF No. 19. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

# I.    BACKGROUND

**A.    Facts**[1]

When she was married, Plaintiff and her husband owned property in Kawaihae, Hawaiʻi (the "Property").  Def.'s CSF ¶ 1.  During their divorce proceedings, a state court judge directed them to sell that Property.  *Id.* ¶ 2.  According to Plaintiff, the market value of the Property is about $575,000.  Pl.'s CSF ¶ 5.  Plaintiff spoke with a friend, Amber Chatwin, about needing to sell the Property, and eventually Ms. Chatwin's companion, Defendant, agreed to purchase the Property.  Def.'s CSF ¶¶ 3–5.  Before the divorce was final, Plaintiff and Defendant orally agreed that (1) Defendant would purchase the Property for $200,000 less than market value, make improvements to the Property, and receive 50% of any rental income generated by a portion of the Property; and (2)

---

[1]  Unless otherwise indicated, the following facts are undisputed.  Plaintiff failed to file a separate statement indicating which facts in Defendant's Concise Statement of Facts ("Def.'s CSF") [ECF No. 20] she disputes and citing to record evidence that places such facts in dispute.  *See* ECF No. 26 ("Pl.'s CSF").  The Court thus deems the facts in Defendant's CSF to be admitted.  *See* LR 56.1(e), (g) (requiring non-moving party to file a statement either admitting or disputing each of the moving party's facts and providing that "material facts set forth in the movant's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party"); *see also* Fed. R. Civ. P. 56(e) (permitting a court to consider a fact undisputed if a party fails to properly address another party's assertion of fact as required by Rule 56(c), which requires a party asserting that a fact is in dispute to support that assertion by citing to materials in the record or showing that the materials the other party relies on cannot show the absence of a genuine dispute).

Defendant would pay Plaintiff's ex-husband $43,000. *Id.* ¶¶ 50–51; Pl.'s CSF ¶ 7.

On August 23, 2017, the state court entered a Divorce Decree terminating

Plaintiff's marriage. Def.'s CSF ¶ 6. The Divorce Decree states:

> The parties' real property shall be transferred to [Defendant] in exchange for the satisfaction of the existing mortgages on the real property, the two tax obligations concerning the real property, the personal debts owed to Amber Chatwin and to [Plaintiff's mother], and [Plaintiff's ex-husband] shall also separately receive, as his sole and separate property, the sum of $43,000.00, with $5,000 of that sum to be paid or available to him within three (3) days from entry of the Decree.[2]

ECF No. 20-3 at 7. Sometime before September 2017, the parties also orally

agreed that Plaintiff could remain living at and operating her business on the

Property, that after successful remodeling she would pay Defendant $2,700 in rent

until they agreed to sell the Property, and that when they sold the Property she

would receive 90% of the proceeds and Defendant would receive the remaining

10%. Pl.'s CSF ¶ 7; Def.'s CSF ¶¶ 50, 52.

On August 30, 2017, Plaintiff's attorney sent her a draft Purchase and Sale

Agreement ("PSA"), which she then forwarded to Defendant. Def.'s CSF ¶ 9. On

September 11, 2017, Plaintiff sent Defendant another version of the PSA. *Id.* ¶ 12.

On September 18, 2017, the escrow company emailed Defendant the PSA that

Plaintiff and her ex-husband had executed, *id.* ¶¶ 13–14, and Defendant executed

---

[2] The Decree contains handwritten edits providing more detail about the mortgagees and tax liabilities. *See* ECF No. 20-3 at 7.

his signature page of the PSA that same day, *id.* ¶ 15.

The final executed PSA is dated September 11, 2017 and provides that Plaintiff and her ex-husband would transfer the Property to Defendant "free from any existing . . . lease, tenancy, right of use or occupancy" in exchange for Defendant paying: $5,000 to Plaintiff's ex-husband (which he had already done per the terms of the Divorce Decree); the rest of the money owed under the terms of the PSA and Divorce Decree, including the remaining $38,000 owed to Plaintiff's ex-husband; and all other liens on the Property, including the two mortgages and the debts owed to Amber Chatwin and Plaintiff's mother. *Id.* ¶¶ 16–17; *see also* ECF No. 20-8 ¶¶ 2(d), 3. The PSA provides that Plaintiff would deliver a deed transferring good and marketable title to the Property to Defendant and that Defendant would be entitled to possession of the Property, and that the existing occupants *other than Plaintiff, her mother, and her son* would vacate the Property before the closing date. *See* ECF No. 20-8 ¶¶ 4(b), 5(b), 7. The PSA also contains an integration clause, stating:

> This Agreement may be amended only by a writing signed by each of the parties hereto. This Agreement constitutes the full and complete understanding between the parties and all agreements and/or contracts, either oral or written, or other legal instruments, are hereby superseded upon execution of this Agreement.

*Id.* ¶ 17.

In early November 2017, before closing, Plaintiff's attorney passed away. Def.'s CSF ¶ 19.  Plaintiff contends that her attorney had been working on putting the parties' *oral* agreements recounted above into writing, but passed away before their completion.  Pl.'s CSF ¶ 8.  Still, she thought the parties agreed to move forward with those oral agreements, and that when Defendant "presented a written agreement" for Plaintiff to sign—presumably the PSA back in September—he led Plaintiff to believe the oral agreement had not changed.  Pl.'s CSF ¶ 10.  It is undisputed, though, that the entirety of the oral agreement is not contained within the PSA,[3] and that the parties never amended the PSA in any signed writing. Def.'s CSF ¶ 54.  Plaintiff says she would not have signed the PSA if she understood what it meant, or knew Defendant's true intentions.  Pl.'s CSF ¶ 12. But it is undisputed that, in August 2017, Plaintiff's attorney prepared and sent her the draft PSA and was still alive and representing her when she signed it in September 2017.  Def.'s CSF ¶¶ 8–12, 14–16; ECF No. 20-4; ECF No. 20-24 at 70:5–71:2.

Shortly after Plaintiff's attorney passed away in November 2017, Plaintiff signed a statement reflecting that the estimated sales price would be $368,711.73, and also signed another statement indicating that all terms and conditions

_____

[3] Portions of the oral agreement are consistent with the terms of the PSA, e.g., Defendant's $43,000 payment to Plaintiff's ex-husband.  *See* Pl.'s CSF ¶ 7; Def.'s CSF ¶ 17.  The PSA is silent, however, as to rent and habitability.

contained in the PSA had been satisfied or were waived.  Def.'s CSF ¶¶ 21–22;

ECF No. 20-12.  On November 22, 2017, Plaintiff and her ex-husband conveyed

title to the Property to Defendant by Apartment Deed.  Def.'s CSF ¶ 23.

Defendant had, in exchange, paid deposits of $38,000 and $335,212, which

satisfied or released the mortgages and liens on the Property.  *Id.* ¶ 24.

    After closing, Defendant allowed Plaintiff to reside on the Property rent-free

through May 2018.  *Id.* ¶ 27.  Plaintiff contends the Property was uninhabitable due

to construction beginning in February 2018, that only her mother stayed at the

Property at this time, and that she and her family were allowed to move back in in

April 2018, even though there was no functioning bathroom or kitchen.  Pl.'s CSF

¶¶ 13–15.  Plaintiff paid Defendant $2,700 in rent each month during June, July,

and August of 2018.  *Id.* ¶ 28.  She contends Defendant's intent became clear

around this time, when he began referring to her as a "tenant" rather than a

"partner."  Pl.'s CSF ¶ 11.  She also states that, in June, August, and September

2018, she informed Defendant of certain dangerous electrical issues at the

Property.  *Id.* ¶ 17–19.

    In October 2018, Plaintiff informed Defendant she had difficulty paying rent

for three months, Def.'s CSF ¶ 30, and Defendant responded that because Plaintiff

did not have a lease, she could leave at any time, but also informed her she was

now two months behind on rent, *id.* ¶¶ 31–32.  Plaintiff objected to the conditions

of the Property and believed she could withhold rent due to these conditions, but also told Defendant that she did not expect to live on the Property for free and that the parties needed to put their agreement in writing. *Id.* ¶¶ 33–36; Pl.'s CSF ¶¶ 20–21. Defendant responded to Plaintiff through a letter from his lawyer that demanded $5,400 in unpaid rent and gave Plaintiff 45 days' notice to vacate the Property, citing HRS § 521-71(a).[4] Def.'s CSF ¶ 37. Plaintiff wrote back to Defendant's attorney, stating that she began paying rent even though details about her use and occupancy were not yet in place, but stopped paying rent because the house was not habitable and the terms of their agreement remained unsettled. *Id.* ¶ 39.

Plaintiff admits Defendant has title to the Property—but argues it was obtained via fraud and asserts a right of possession due to the parties' oral agreement, which was made before the parties signed the PSA. *Id.* ¶¶ 44–53.

---

[4] That section provides:

> (a) When the tenancy is month-to-month, the landlord may terminate the rental agreement by notifying the tenant, in writing, at least forty-five days in advance of the anticipated termination. When the landlord provides notification of termination, the tenant may vacate at any time within the last forty-five days of the period between the notification and the termination date, but the tenant shall notify the landlord of the date the tenant will vacate the dwelling unit and shall pay a prorated rent for that period of occupation.

HRS § 521-71(a).

Since closing and until recently, Plaintiff has operated a commercial bakery on the Property, which generates $15,000 in monthly sales, has paid rent only for the three months described above, and refuses to vacate the Property. *Id.* ¶¶ 55–57, 60–61. Plaintiff reports that, in November and December 2019, Defendant's construction resulted in a water shutdown and the blocking of driveways which have interfered with her ability to conduct business on the Property. Pl.'s CSF ¶¶ 24, 30–35.

## B. Procedural History

Plaintiff filed suit in state court, alleging claims for fraud (Count I); unjust enrichment (Count II); promissory estoppel (Count III); and breach of contract (Count IV). *See* ECF No. 1-2. Defendant removed the action to federal court, *see* ECF No. 1, and then filed counterclaims against Plaintiff for trespass (Counterclaim I); ejectment (Counterclaim II); unjust enrichment (Counterclaim III); and abuse of process (Counterclaim IV). *See* ECF No. 6. Defendant seeks summary judgment in his favor on all of Plaintiff's claims, and also requests summary judgment on his claim for ejectment and as to liability for his claim for trespass. *See* ECF Nos. 19, 20, 27. Plaintiff opposes Defendant's motion. *See* ECF Nos. 25, 26. The Court held a hearing on Defendant's motion on January 24,

2020.[5]

## II.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "This burden is not a light one." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). But the

---

[5] Before filing this action in state court, Plaintiff filed a petition in Hawaiʻi Land Court (the "Land Court Proceeding") to expunge the Apartment Deed conveyed to Defendant, reject the final certification of the transfer certificate of title accompanying that conveyance, and reinstate the prior transfer certificate of title. *See* Def.'s CSF ¶¶ 58–59; ECF No. 6-12. In its motion, Defendant indicated the Land Court dismissed both Plaintiff's Petition and his counterclaims in the Land Court Proceeding, but the Court requested additional information to ensure there were no issues with exercising jurisdiction over the instant, later-filed action. *See* ECF No. 30. The parties' supplemental filings make clear the Land Court disposed of all pending claims. *See, e.g.*, ECF No. 32-6 at 2–4; ECF No. 32-7 at 5–7. While the Land Court has not yet entered final judgment, this is because Plaintiff delayed over four months submitting a formal order reflecting the Land Court's rulings. *See* ECF No. 33-1 ¶ 7; ECF No. 32-7 at 7–8. Still, it is apparent the Land Court dismissed the parties' claims and did so without prejudice so they could be adjudicated on the merits here. *See, e.g.*, ECF No. 32-6 at 2–4 (dismissing Plaintiff's petition and indicating it did not want to interfere with this action); ECF No. 32-7 at 2–7 (confirming only Defendant's counterclaims remained pending and concluding Land Court lacked jurisdiction to entertain those claims). The Court therefore concludes it has jurisdiction over the claims in this action, that abstention is inappropriate, and, based on the parties' agreement that the Land Court rulings have no preclusive effect under Hawaiʻi law, that it must resolve these claims on the merits. *See* ECF No. 32 at 9–11; ECF No. 33 at 7.

moving party need not disprove the opposing party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. *See id.* at 323–24; Fed. R. Civ. P. 56(c)(1).

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992) (citation omitted). Rather, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (internal quotation marks and ellipsis omitted). A district court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## III. DISCUSSION

### A. Fraud (Plaintiff's Count I)

Plaintiff contends Defendant engaged in fraud by making false representations to induce her to enter an oral agreement under which she transferred title to the Property. To prove fraudulent inducement under Hawaiʻi

law, Plaintiff must prove "(1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other party, and (4) upon which the other party relies and acts to [his or her] damage." *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Hawaiʻi 213, 230, 11 P.3d 1, 18 (2000) (alteration in original) (citation omitted).  Defendant seeks summary judgment because all of his misrepresentations constitute promises of future conduct, which cannot support a fraud claim as a matter of law.  *See* ECF No. 19-1 at 8–11.  The Court agrees.

Under the first element, a false representation "must relate to a past or existing material fact, and not to the happening of future events."  *Keka*, 94 Hawaiʻi at 230, 11 P.3d at 18 (citation omitted).  Thus,

> fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise.

*Stahl v. Balsara*, 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978) (citation omitted).  Defendant contends that any misrepresentations here—about making certain improvements to the Property in the future, allowing Plaintiff to stay at the Property until remodeling was "successful," and then permitting Plaintiff to stay as a tenant until they agreed to sell the Property and split the proceeds—all constitute

broken promises as to future events that are not actionable.  *See* ECF No. 19-1 at

8–11.  As Defendant notes, Plaintiff does not respond to this argument, and so

concedes that the alleged misrepresentations do not support a fraud claim because

they do not relate to past or present facts.  *See Abogados v. AT&T, Inc.*, 223 F.3d

932, 937 (9th Cir. 2000) (holding that failure to raise argument in opposition to

summary judgment constitutes waiver of that argument); *see also Yonemoto v.

McDonald*, Civil No. 11-00533 JMS/RLP, 2015 WL 1863033, at *7 (D. Haw. Apr.

22, 2015) (citing cases).  Indeed, even as phrased by Plaintiff, each alleged

misrepresentation constitutes a *promissory* statement.  *See* ECF No. 25 at 11–12.

While a promise relating to future action or conduct may be actionable if the

promise was made without the present intent to fulfill that promise, *see E. Star,

Inc., S.A. v. Union Bldg. Materials Corp*., 6 Haw. App. 125, 140, 712 P.2d 1148,

1159 (1985), Plaintiff does not cite that legal doctrine or case law in support of it

here.  *See* ECF No. 25 at 11–12.  Regardless, to succeed on that argument, Plaintiff

would need to offer evidence of fraudulent intent.  *See Honolulu Fed. Sav. & Loan

Ass'n v. Murphy,* 7 Haw. App. 196, 203, 753 P.2d 807, 813 (1988) (citing *Aloha

Petroglyph, Inc. v. Alexander & Baldwin, Inc.*, 1 Haw. App. 353, 354, 619 P.2d

518, 519 (1980) (holding that a defendant's denial that he made a certain promise

was insufficient to raise a triable issue as to his fraudulent intent because "the party

with the burden of proof . . . cannot rely solely upon the hope that the jury will not

trust the credibility of opposing witnesses to establish her case[;] [t]here must be

some affirmative evidence that [defendant] possessed fraudulent intent"));

*Barranco v. 3D Sys. Corp.*, Civil No. 13-00412 LEK-RLP, 2015 WL 419687, at

*13 (D. Haw. Jan. 30, 2015) ("[I]n light of a complete dearth of, for instance,

contemporaneous documents from the time of the [] negotiations or any real

admission that tends to show a lack of intent to fulfill the promises, this Court

cannot say that Plaintiffs have raised a genuine issue of material fact."); *Keka*, 94

Hawai'i at 230, 11 P.3d at 18 (holding plaintiff raised genuine issue of fact by

pointing to evidence of defendant's later contradictory conduct and failure to

explain why promise could not be fulfilled). Plaintiff fails to point the Court to

*any* evidence, let alone evidence that Defendant lacked a present intent to fulfill a

promise.[6] *See* ECF No. 25 at 11–12. Particularly in light of Plaintiff's standard of

proof on this claim and Plaintiff's failure to point to any direct or circumstantial

evidence about Defendant's intent at the time any promise was made, the Court

cannot conclude that Plaintiff has raised a triable issue. *See Stahl*, 60 Haw. at 148,

---

[6] Nor is Plaintiff's statement—without citation to evidence—that Defendant "knew his representations to be false," ECF No. 25 at 12, sufficient to raise a triable issue. *See Carmen*, 237 F.3d at 1028 (affirming summary judgment where there was no evidence of any basis in personal knowledge for plaintiff's subjective belief about defendant's motive). And it is not for the Court to search through Plaintiff's asserted facts to identify which, if any, raise a triable issue. That distorts the adversarial process, depriving the moving party an opportunity to respond. *See id.* at 1031.

587 P.2d at 1213 (noting that facts proving fraud must be clearly established and affirming summary judgment in favor of defendant where there was no evidence he knew certain promises were false at time of making them); *see also* Fed. R. Civ. P. 56(c)(1) (party asserting fact that is genuinely disputed must support the assertion by citing to materials in the record).  The Court thus **GRANTS** Defendant's motion as to Plaintiff's fraud clam.

## B.    Breach of Contract (Plaintiff's Count IV)

Plaintiff contends Defendant breached their oral agreement by not upholding certain promises about improving the Property and permitting her to remain on the Property.  Defendant seeks summary judgment on this claim on two grounds.

Defendant first argues that the essential terms of the oral agreement are uncertain and indefinite, and at most reveal an agreement to engage in further negotiations, meaning there is no binding contract to enforce.  ECF No. 19-1 at 13–15.  Indeed, "[t]o be enforceable a contract must be certain and definite as to its essential terms."  *Boteilho v. Boteilho*, 58 Haw. 40, 42, 564 P.2d 144, 146 (1977) (citation omitted).  An essential term is generally viewed as one integral to the contract itself.  *See Assocs. Fin. Servs. Co. of Hawaiʻi v. Mijo*, 87 Haw. 19, 32, 950 P.2d 1219, 1232 (1998) (finding terms not essential where details did not change the terms or purpose to be accomplished by the agreement); *see also Clarkin v. Reimann*, 2 Haw. App. 618, 627, 638 P.2d 857, 863 (1981) (concluding there was

14

no valid, enforceable contract where agreement did not outline rent or method of ascertaining rent and instead indicated parties had left terms undecided for future negotiation).  A term is uncertain if there is not a sufficient basis for a court to determine whether or not there has been a breach of that term or to provide an appropriate remedy.  *See Clarkin*, 2 Haw. App. at 627, 638 P.2d at 863; *Almeida v. Almeida*, 4 Haw. App. 513, 519, 669 P.2d 174, 179 (1983).  The indefiniteness of an agreement can be resolved as a matter of law.  *See Honolulu Waterfront Ltd. v. Aloha Tower Dev. Corp.*, 692 F. Supp. 1230, 1234–37 (D. Haw. 1988), *aff'd*, 891 F.2d 295 (9th Cir. 1989).

Specifically, Defendant argues that the terms Plaintiff contends he has breached—by, for example, not making "improvements" to the Property and demanding rent before "the successful remodeling"—are too uncertain and indefinite to give rise to an enforceable contract.  *See* ECF No. 19-1 at 14–15 (quoting from Plaintiff's Complaint).  Defendant also cites to Plaintiff's own statements describing the parties' agreement as indefinite and indicating the parties needed to settle on more certain terms.  *See* Def.'s CSF ¶ 34 ("I do not expect to live in this house for free [. . .] I feel it's a time where we all need to [ . . .] put some agreements down in writing."); *id.* ¶ 39 ("In June 2018, I began to make payments to [Defendant] even though [ . . . ] important parts of our agreement about occupancy and use of the property were not yet in place.  I stopped paying

[Defendant] $2700 monthly in September as the house was still not habitable, the terms of our agreement remain unsettled [ . . .]."); *id.* ¶¶ 40–41 (asserting Taylor testified that an agreement remained "unsettled" due to her attorney's death and that a lawyer was necessary to "hammer out an agreement," and that a possible operating agreement as to her occupancy was not completed or drafted). As Defendant notes, Plaintiff does not respond to this argument or evidence, and so concedes that these terms are essential and indefinite as a matter of law and thus cannot form the basis for a breach of contract claim. *See* ECF No. 25 at 12–13 (arguing only that partial performance takes the parties' oral agreement outside the Statute of Frauds).

Defendant also argues he is entitled to judgment in his favor for this claim because any oral agreement predates the parties' written PSA that contains an integration clause, which supersedes any of the parties' prior oral negotiations or agreements. *See* ECF No. 19-1 at 15–17. Plaintiff does not dispute that the PSA contains an integration clause that, if enforceable, would bar her from introducing extrinsic evidence to vary or contradict the terms of the PSA under the parol evidence rule. ECF No. 25 at 13–14; Def.'s CSF ¶¶ 16, 51–54. "The parol evidence rule 'precludes the use of extrinsic evidence to vary or contradict the

terms of an unambiguous[7] and integrated contract.'" *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Hawai'i 36, 45, 305 P.3d 452, 461 (2013) (quoting *Pancakes of Hawaii, Inc. v. Pomare Props. Corp.*, 85 Hawai'i 300, 310, 944 P.2d 97, 107 (App. 1997)); *see Pancakes of Hawaii*, 85 Hawai'i at 310, 944 P.2d at 107 ("The parol evidence rule applies when there is a single final memorial of the understanding of the parties; when that takes place, all prior and contemporaneous negotiations are excluded and are superseded by such written memorial." (footnote and citation omitted)).

Instead, Plaintiff contends that the PSA—and integration clause within it—are void and unenforceable under HRS § 480-12 because the PSA was the result of Defendant's unfair or deceptive conduct in violation of HRS § 480-2. *See* ECF No. 25 at 13–14. This argument lacks merit for a few reasons. First, while there is an exception to the parol evidence rule that permits extrinsic evidence to prove fraud, *see Pancakes of Hawaii*, 85 Hawai'i at 310–11, 944 P.2d at 107–08, Plaintiff's Complaint contains no allegation that she was induced to sign the *PSA* as the result of fraud or that the *PSA* is void because it resulted from Defendant's deceptive conduct. *See* ECF No. 1-2; *see also* ECF No. 19-1 at 12 n.6. Having failed to provide the Court or Defendant with notice of this theory, the Court need

---

[7] Plaintiff does not argue that the terms of the PSA are ambiguous, which might also warrant looking outside the four corners of the PSA.

not consider it at this stage.  *See Hotelco HI HO LLC v. Thyssenkrupp Elevator Corp.*, CIVIL NO. 16-00625 KJM, 2017 WL 10647375, at *9 (D. Haw. Dec. 31, 2017) (declining to consider plaintiff's new fraudulent inducement theory raised for the first time in opposing summary judgment and granting judgment in favor of defendant based on integration clause); *Adwalls Media, LLC v. Ad Walls, LLC*, Civil No.  12-00614 SOM/BMK, 2015 WL 419664, at *6 (D. Haw. Jan. 30, 2015) (same).

As Defendant also notes, Plaintiff does not submit any argument or evidence supporting her theory that Defendant's complained-of conduct constitutes "trade or commerce" as required under HRS § 480-2.  *See* ECF No. 27 at 10 n.6.  Indeed, when assessing this element of a claim under HRS § 480-2, Hawaiʻi has distinguished between purely private transactions and transactions between a consumer and a professional or business organization engaging in the commercial field in which they specialize.  *See, e.g.*, *Cieri v. Leticia Query Realty, Inc.*, 80 Hawaiʻi 54, 63, 905 P.2d 29, 38 (1995), *as amended* (Oct. 12, 1995) (citing with approval a Massachusetts case describing a state law identical to HRS § 480-2 as "not available where the transaction is strictly private in nature, and is in no way undertaken in the ordinary course of a trade or business" and so holding law did not apply to real estate transaction between private seller and buyers) (citation

omitted)); *Goran Pleho, LLC v. Lacy*, 144 Hawaiʻi 224, 244, 439 P.3d 176, 196 (2019) (citing *id.*).

Further, in seeking to oppose summary judgment based on this new theory, Plaintiff fails to cite to any facts that raise a triable issue. *See* ECF No. 25 at 13–14; *see also* Fed. R. Civ. P. 56(c)(1)(A); *Carmen*, 237 F.3d at 1031 (holding that it is unfair to both the district court and the moving party to require the district court to search the record for a genuine issue of fact when the non-moving party does not set out the specific facts). And, as discussed above, Plaintiff does not contest that Defendant's promises relate to future conduct and so are not actionable, and also fails to point to evidence in the record that would raise a triable issue as to Defendant's fraudulent intent at the time he made certain promises. While Plaintiff argues without citation to the record that the PSA "was the result of [Defendant]'s scheme to defraud [Plaintiff] and fundamentally alter the agreed-upon terms *without her knowledge*," ECF No. 25 at 13 (emphasis added), it is undisputed that Plaintiff and her attorney participated in the negotiation of the PSA and that Plaintiff ultimately signed the PSA. *See* Def. CSF ¶¶ 12, 14, 16.

For these reasons, the Court **GRANTS** Defendant's motion as to Plaintiff's breach of contract claim.

## C. Unjust Enrichment, Promissory Estoppel, and Specific Performance (Plaintiff's Counts II and III)

Defendant seeks summary judgment on Plaintiff's claims of unjust

enrichment and promissory estoppel, arguing that Plaintiff is not entitled to these equitable remedies because an express contract exists between the parties concerning the same subject matter. *See* ECF No. 19 at 17–21.

Hawaiʻi "observes the principle, long-invoked in the federal courts, that 'equity has always acted only when legal remedies were inadequate.'" *Porter v. Hu*, 116 Hawaiʻi 42, 55, 169 P.3d 994, 1007 (App. 2007) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)). Thus, "[w]here the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity." *AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, CV No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008). One of the purposes of the rule "is to guard against the use of equitable remedies to distort a negotiated arrangement by broadening the scope of the contract." *Id.* (internal quotation marks and citation omitted). Thus, equitable remedies like promissory estoppel and unjust enrichment "are not available when an express contract exists between the parties concerning the same subject matter." *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1064 (D. Haw. 2010) (citations omitted).

Plaintiff's opposition does not respond to this argument, and so concedes that her equitable claims fail because they concern the same subject matter as the PSA (the parties' rights and obligations about the price, transfer, and use of the

Property).[8] *See* Def.'s CSF ¶¶ 16–17; ECF No. 1-2 ¶ 16; ECF No. 20-8. Instead, Plaintiff dedicates a single sentence to opposing summary judgment on these claims, declining to cite any legal authority or evidence in the record in support of her argument, and leaving both the Court and Defendant to guess at the exact basis for her argument. *See* ECF No. 25 at 14; *see also Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for [a party], and a bare assertion does not preserve a claim[.]" (citation omitted)). To the extent Plaintiff objects to the validity of the PSA and its integration clause, or relies on an alleged oral contract between the parties, those arguments lack merit for the reasons already discussed above.

Plaintiff also requested specific performance as a remedy under her claim for promissory estoppel, but does not oppose Defendant's request for summary judgment in his favor for that remedy. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) ("We have previously held that a plaintiff has 'abandoned . . . claims by not raising them in opposition to [the defendant's] motion for summary judgment.'" (alterations in original) (quoting *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005))). Further, because specific performance is a remedy limited to the enforcement of contract duties, *see Clarkin*, 2 Haw. App. at

---

[8] At the hearing on Defendant's motion, Plaintiff's counsel affirmatively conceded that her equitable claims concern the same subject matter as the PSA.

627, 638 P.2d at 864, and Plaintiff has not raised a triable issue as to the existence or enforceability of the parties' oral agreement, any request for specific performance of that agreement necessarily fails.

For these reasons, the Court **GRANTS** Defendant's motion as to Plaintiff's unjust enrichment claim, as well as Plaintiff's promissory estoppel claim and corresponding request for specific performance.

**D.      Ejectment and Trespass (Defendant's Counts II and III)**

Defendant also seeks summary judgment in his favor for his own claims for ejectment and trespass.  To maintain an ejectment action, Defendant must prove (1) he owns the parcel at issue, meaning he has the title to and right of possession of the parcel; and (2) Plaintiff is unlawfully withholding that possession.  *See Kondaur Capital Corp. v. Matsuyoshi*, 136 Hawaiʻi 227, 241, 361 P.3d 454, 468 (2015).  To prove liability for trespass, Defendant must prove Plaintiff intentionally entered land in Defendant's possession or remains on that land.  *See Strategic Realty Fund, LLC v. Sarmiento*, CIVIL 17-00545 LEK-RLP, 2018 WL 3638081, at *3 (D. Haw. July 31, 2018).  It is undisputed that Defendant has title to the Property by virtue of the recorded Deed, that Plaintiff has admitted that Defendant holds title to the Property, and that Plaintiff is still occupying the Property.  Def.'s CSF ¶¶ 23, 49, 55–57.  In her opposition, Plaintiff does not dispute that Defendant has carried his burden and proven the elements of these

claims.  See ECF No. 25 at 9–10.  Instead, she relies only on the affirmative, equitable defense of unclean hands, arguing Defendant should nonetheless not obtain relief in his favor on these claims because his construction has deliberately interfered with her use of the Property.  *See id.*  As Defendant notes, Plaintiff did not raise this defense in any of her pleadings.  *See* ECF No. 1-2; ECF No. 11.  Defendant has not articulated how he has been prejudiced by this delay, though, so Plaintiff may raise this affirmative defense for the first time at summary judgment.  *See Garcia v. Salvation Army*, 918 F.3d 997, 1008–09 (9th Cir. 2019).

> The Hawai‘i Supreme Court

>> has limited the doctrine of 'unclean hands,' or the equitable maxim 'he who comes into equity must come with clean hands,' in the following manner:

>>> *The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties*, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern.  When a court of equity is appealed to for relief it will not go outside of the subject matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands.

*7's Enters., Inc. v. Del Rosario*, 111 Hawai'i 484, 494–95, 143 P.3d 23, 33–34 (2006) (quoting *Woodward v. Auyong*, 33 Haw. 810, 811–12 (1936)).

Plaintiff first does not explain how an unclean hands defense is viable here, where Defendant does not seek any equitable relief but instead brings a legal claim for ejectment, and seeks only summary judgment as to liability on his tort claim for trespass for which he only seeks damages.[9] *See Aames Funding Corp. v. Mores*, 107 Hawai'i 95, 104, 110 P.3d 1042, 1051 (2005) (describing action of ejectment as an ordinary remedy of law) (citing *Carter v. Kaikainahaole*, 14 Haw. 515, 516 (1902)); *see Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865–66 (9th Cir. 2017) (discussing monetary relief as a legal remedy, except when it is a type of restitution that restores to the plaintiff particular funds in defendant's possession or when it is merely incidental to or intertwined with injunctive relief).[10] Plaintiff next fails to explain how her argument about Defendant cutting off utilities and restricting access to the Property affects the relief sought for ejectment and liability as to trespass, particularly where she does not dispute that it is Defendant who has the right to title in and possession of the Property. *See 7's Enters.*, 111 Hawai'i at 495, 143 P.3d at 34. And, again, Plaintiff does not cite any evidence in the record

---

[9] *See* ECF No. 6 ¶ 72.

[10] The only Hawai'i authority that Plaintiff cites—*7's Enterprises*—addressed unclean hands as a defense to a party's request for equitable injunctive relief. *See* 111 Hawai'i at 495, 143 P.3d at 34.

that would raise a triable issue as to whether Defendant's misconduct reaches the type of fraudulent or dishonest practice, abuse of process, or conduct contrary to equity and good conscience that would justify the Court finding, in its discretion, that Defendant's conduct amounts to unclean hands. *See Lucas v. Am.-Hawaiian Eng'g & Constr. Co.*, 16 Haw. 80, 85 (1904); *7's Enters.*, 111 Hawaiʻi at 489, 143 P.3d at 28. The Court thus **GRANTS** summary judgment in Defendant's favor on his counterclaims for ejectment and liability for trespass.

//

//

//

//

//

//

//

//

//

//

//

//

//

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.  Defendant is entitled to a judgment for possession and writ of possession.  Defendant is ORDERED to submit a proposed order by March 6, 2020.  The Court will schedule a status conference to address a trial on damages for Defendant's counterclaim for trespass, as well as Defendant's other remaining counterclaims.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, February 26, 2020.

Jill A. Otake
United States District Judge